IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE:<br>ERIC G DESARDI, JR.,<br>    Debtor. | §<br>§<br>§<br>§<br>§ | CASE NO: 05-95075<br><br>CHAPTER 13 |
| IN RE:<br>WILMA LABOVE,<br>    Debtor. | §<br>§<br>§<br>§<br>§ | CASE NO: 05-95052<br><br>CHAPTER 13 |
| IN RE:<br><br>ROBERT ANTHONY O'NEIL,<br>    Debtor. | §<br>§<br>§<br>§<br>§<br>§ | CASE NO: 05-95121<br><br>CHAPTER 13 |

## MEMORANDUM OPINION

On October 17, 2005, several provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) became effective. Among those are provisions that affect the rights of creditors whose claims are secured by purchase money security interests in vehicles in chapter 13 cases. New local rules and a new uniform chapter 13 plan, both of which provide for adequate protection for vehicle lenders in chapter 13 bankruptcy cases, also became effective in this District on October 17, 2005.

Various disputes have arisen in these cases that require the Court to resolve the interplay between BAPCPA, the Bankruptcy Local Rules ("BLR") of the Southern District of Texas, and the Uniform Plan adopted by the Southern District of Texas. Because of the related nature of the disputes, the Court issues this memorandum opinion in the above-referenced cases. Separate orders that are consistent with this memorandum opinion will be issued in each case.

The following issues have been raised:

1

- Are adequate protection payments to automobile lenders senior or junior in priority to attorneys fees claims by chapter 13 debtor's counsel?

- Should the Court consider the total amount of the lender's claim in deciding the amount of adequate protection to be provided to automobile lenders under § 363 and § 1325 of the Bankruptcy Code?

- Does § 1325(a)(5)(B)(iii) require that equal payments commence in the first month of the plan and continue at the same amount throughout the plan's term?

- What is the appropriate interest rate to be paid to a lender who holds purchase money debt both (1) incurred within 910 days preceding the petition date; and (2) secured by an automobile?

### Summary Conclusions

For the reasons set forth below, the Court has concluded that:

1.     In these three cases, adequate protection payments have priority over payments awarded to debtors' counsel under § 330 of the Bankruptcy Code.  Payments in excess of required adequate protection do not have priority.

2.     In determining the amount of adequate protection, the amount of the lender's claim is relevant only if the amount of the claim is less than the value of the collateral.  If the amount of the lender's claim exceeds the value of the collateral, the actual amount of the claim is irrelevant in determining adequate protection.

3.     Equal payments neither need to commence in the first month nor continue until the last month of a chapter 13 plan.

4.     The interest rate to be paid to an automobile lender under BAPCPA should be determined in accordance with *In re Till*, 541 U.S. 465 (2004).

## Factual Background

### Eric DeSardi, Jr.

Mr. DeSardi filed a chapter 13 bankruptcy petition, along with his schedules and his statement of financial affairs, on October 31, 2005. Mr. DeSardi works as a technician at Sweeten Truck Center in Houston. He is married, with a four-year old daughter. He owns a 2002 Dodge Ram with 126,000 miles, financed by Chrysler Financial (now DaimlerChrysler). He purchased the Dodge Ram on November 15, 2001, 1446 days before he filed bankruptcy. Mr. DeSardi owes approximately $11,500 on his truck. The truck is valued at approximately $12,500.

Mr. DeSardi originally proposed a chapter 13 plan on October 31, 2005. He proposed amended plans on December 21, 2005, and February 9, 2006. The original and amended plans are in the form required by the local rules. The Court conducted a confirmation hearing on February 27, 2006, to consider confirmation of the proposed plan, as amended on February 9, 2006.

The February 9, 2006 plan proposes to amortize DaimlerChrysler's full claim at an annual interest rate of 8.25%, with level payments beginning in the sixth month of the plan and ending in the fifty-third month of the plan. Current local rules dictate that the amount of payments set forth in a plan for payments on claims secured by personal property are only estimates; the actual amount of payments to be made is determined based on the actual allowance of the creditor's claim.[1] BLR 3015(a)(4). The level payments are estimated by Mr.

---

[1] The procedures for claims allowance are distinct from the procedures for plan confirmation. "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f). Any objection to a claim must be filed in writing. FED. R. BANKR. P. 3007. At least 30 days notice must be given before a hearing on a claim objection. *Id.* Because of the short deadlines for confirmation, many claims objections must be resolved after a plan is confirmed. Under the Southern District's current local rules, plans need not be modified if they remain feasible following the claim objection process.

DeSardi to be $290.23.  Although this estimate may prove to be incorrect, an estimation error does not preclude plan confirmation.

For the first through fifth month after the petition date, the plan proposes to pay DaimlerChrysler adequate protection payments.[2]   The proposed plan provides that DaimlerChrysler will retain its lien until it is fully paid.

**Wilma LaBove**

Ms. LaBove filed her chapter 13 bankruptcy petition, schedules and statement of financial affairs on October 31, 2005.  Ms. LaBove is employed in Houston as a ticket agent for Continental Airlines.  She is a single mother of two children, ages nineteen and nine.  Ms. LaBove owns a 2003 Ford Explorer that is financed by Nuvell Financial Services.  The truck was purchased 755 days before the petition was filed.  The Explorer is worth approximately $19,000, with approximately $22,000 still owed to Nuvell.

Ms. LaBove filed her first chapter 13 plan on October 31, 2005.  She filed amended plans on December 22, 2005, and February 24, 2006.  On February 27, 2006, the Court held a hearing to determine whether to confirm the second proposed amended plan.

The February 24, 2006 plan proposes to amortize Nuvell's full claim at 8.25%. Estimated level payments of $485.26 are scheduled to begin in month five and continue through month sixty.  The plan proposes an adequate protection payment estimated at approximately

---

[2] The adequate protection payments in the plan are also only estimates.  The actual amount to be paid is governed by BLR 4001(e)(2), the initial order issued in this case providing adequate protection, and paragraph 5 of the proposed plan.  Pursuant to BLR 4001(e) and the initial order issued in this case (as described later in this opinion), adequate protection must be provided in an amount equal to 1.5% of the average wholesale and retail value of the vehicle. Paragraph 5 of the proposed plan provides that "[i]f the monthly payment proposed in the plan is less than the amount of the adequate protection payment ordered in this case, the actual payment will be the amount of the monthly adequate protection payment."  As set forth in more detail below, no party has timely challenged the appropriateness of the 1.5% adequate protection payment.  In some months, the proposed plan lists $0.00 as the amount of the payment to the lender.  That numeric estimate does not control.  The payment proposed under the plan is never less than the amount required for adequate protection.

$300 for months one through four.  The plan provides that Nuvell will retain its lien until it is fully paid.

**Robert O'Neil**

Mr. O'Neil filed a voluntary petition under chapter 13 on November 1, 2005.  He filed his schedules and a statement of financial affairs on November 16, 2005.  Mr. O'Neil works as a contract driver for Watkins Motor Freight in Houston.  He is married and has a son, age three.  His wife is a teacher's aide.  Mr. O'Neil owns a 2004 Chevrolet Impala worth $14,500.  The vehicle was purchased 611 days before he filed his chapter 13 petition.  The Impala was financed by Centrix Res.  Approximately $25,000 is still owed on the car.

Mr. O'Neil filed his first chapter 13 plan on November 16, 2005.  On February 6, 2006, and February 21, 2006, Mr. O'Neil filed amended chapter 13 plans.  At a hearing on February 27, 2006, the Court considered whether to confirm the second proposed amended plan.  That plan proposes to amortize Centrix's claim at 8.25%. Level payments estimated at approximately $550 are scheduled to begin in month seven and continue through month fifty-eight.  Adequate protection payments estimated at approximately $200 are scheduled for months one through six.

**Creditor Objections**

At the hearing on February 27, 2006, DaimlerChrysler and Nuvell objected to the confirmation of the DeSardi and LaBove plans, respectively.  Each creditor objected to the debtor's plan provision that granted the debtor's attorney's fees priority payment over any interim adequate protection payments afforded by the plan itself.  Counsel for DeSardi and LaBove argue that § 1326(b) of the Bankruptcy Code gives debtor's attorney's fees priority over any payment to creditors.

Nuvell objects to confirmation of the LaBove plan on additional grounds. Nuvell argues that the amendments to § 1325 are intended to preserve a lender's full secured claim. Consequently, Nuvell argues that § 1325 mandates that the Court apply the 1.5% to the amount of Nuvell's claim rather than the vehicle's actual value.

DaimlerChrysler also objects to confirmation because the debtor's plan is "deficient pursuant to 11 U.S.C. § 1325(a)(5)(B)(iii)(I) because it does not provide for periodic payments in equal monthly amounts, in that no payments are scheduled to DaimlerChrysler for months one through six." DaimlerChrysler's Objection to Confirmation at 1, *In re Desardi* (docket no. 32). Nuvell also raises this issue. Specifically, Nuvell objects to the fact that its payments do not begin until month five of the plan. This treatment, Nuvell claims, is in violation of 11 U.S.C. § 1325(a)(5)(B)(iii)(I).

A portion of this dispute arose because the debtors and the creditors all misinterpreted the Southern District's local rules and uniform plan. In oral argument, all of the lawyers believed that the three proposed plans *did not* provide for continued adequate protection payments after plan confirmation. Instead, the parties believed that the plans diverted these funds to debtors' counsel. Because this interpretation is contrary to the plain meaning of the plans[3], the Court rejects the interpretation and will apply the plain meaning.

Credit Union of Texas (Centrix) objects to the proposed plan in the O'Neil case because the plan proposes an 8.25% interest rate. Although Centrix acknowledges that this rate satisfies the requirements of *In re Till*, it argues that Congress intended to increase protections to car lenders. Centrix claims that the 8.25% interest rate is improper because it is lower than the rate provided for in the original contract between the debtor and Centrix. Centrix argues that such a

---

[3] The plans each contain the following statement: "If the monthly payment proposed in the plan is less than the amount of the adequate protection payment ordered in this case, the actual payment will be the amount of the monthly adequate protection payment." (Uniform Plan at ¶ 5).

reduction of the interest rate, per *Till*, is improper in this case because *Till* is predicated upon a cramdown pursuant to 11 U.S.C. § 506. *In re Till*, 541 U.S. at 465. This case does not involve a cramdown because BAPCPA no longer allows a § 506 cramdown pursuant to § 1325(a)(5) for a car with a purchase money security lien that was less than 910 days old as of the petition date. The debtor maintains that the *Till* rate is correct.

**Legal Issues**

**Adequate Protection for Vehicles in the Southern District of Texas**

11 U.S.C. § 1306 allows a debtor to retain possession of all property of the estate, subject to the specific provisions of a confirmed plan or an order confirming a plan. Furthermore, § 1303 allows a debtor to exercise the rights afforded to a trustee under § 363(b), (d), (e), (f), and (l).

Section 363(e) states that when a trustee uses, sells or leases property, the Court "on request of an entity that has an interest in [the] property ... shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). The concept of adequate protection finds its basis in the Fifth Amendment's protection of property interests. H.R. REP. NO. 95-595, 338-340 (1977). Adequate protection is also grounded in the belief that secured creditors should not be deprived of the benefit of their bargain. *Id.*

In accordance with the Bankruptcy Code, and specifically the principles and policies underlying § 363, the Southern District of Texas adopted BLR 4001(e), which provides that "[i]n each chapter 13 case, the Court will issue an order that authorizes the use of estate vehicles under § 363 and provides adequate protection to the holders of liens on vehicles." BLR 4001(e). Examples of the type of adequate protection required under § 363 are provided by § 361 of the

Code. Section 361(1) allows a trustee to furnish adequate protection to an appropriate entity via "a cash payment or periodic cash payments." 11 U.S.C. § 361(1). Section 361(2) allows for the granting of "an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property." 11 U.S.C. § 361(2). Finally, § 361(3) provides for the "granting of such other relief, other than entitling such entity to compensation allowable under § 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361(3). In accordance with § 361(3), the Southern District of Texas adopted BLR 4001(e)(1), which provides that the adequate protection order will require:

> …the debtor to (i) maintain insurance on the vehicle in the amount required by the debtor(s) prepetition contract; (ii) provide proof of insurance to the lien holder; and (iii) enter into a wage order or EFT Order not later than the date of the §341 meeting of creditors.

BLR 4001(e)(1).

As additional adequate protection, and pursuant to § 361(2), BLR 4001(e)(2) provides the following:

> [T]he lien holder will be given an administrative claim, with priority under § 507(b), in an amount equal to 1.5% of the value of the vehicle for each 30 days that elapses from the date of the adequate protection order. For example, if the vehicle is valued at $10,000, a § 507(b) adequate protection claim in the amount of $150 will accrue each month. In the event of a dismissal or conversion of the chapter 13 case, the trustee will distribute the proceeds in accordance with § 1326(a)(2). This will result, in most cases, in payments being made in the following order of priority:
>
> (A) First, to the vehicle lien holders in the amount of the adequate protection reserve;
>
> (B) Second, to debtor's counsel for unpaid fees for which an application is filed on or before 20 days after entry of the order of dismissal and that have been allowed by court order;

    (C)  Third, to the debtor (directly and not through counsel).

    (D)  Payments under paragraph "1" shall be made following the expiration of 10 days of entry of the dismissal order, unless the dismissal order is stayed.

BLR 4001(e)(2).

If a creditor's interests will not be fairly protected by BLR 4001, or if a debtor will be disadvantaged, BLR 4001(e)(3) provides for due process:

> The debtor or any other party in interest may object to the adequate protection order not later than 10 days after entry of the court's order. The objecting party must state the date that the hearing will be conducted, which date will be the next chapter 13 panel after the expiration of 15 days from the date of the objection. The objection must be served on the debtor, the debtor's counsel, the chapter 13 trustee, and any party holding security interest in the vehicle. The objecting party must attend the hearing and present evidence in support of the objection.

BLR 4001(e)(3).

In each of these cases, the orders for adequate protection under BLR 4001(e)(1) and (2) were issued by the Court. The orders state, in relevant part:

> The debtor(s) are authorized to use their vehicle(s) pursuant to § 363 of the Bankruptcy Code, conditioned on the following:
>
> 1. The debtors must maintain insurance on the vehicle(s) in the amounts and with the coverages pertaining to the vehicle itself required by the contract with any holder of a pre-petition lien on the vehicle(s).
>
>     a. Proof of insurance must be provided within 5 days of receipt of written request by the holder of a vehicle lien.
>
>     b. The debtors must timely make all required payments to the chapter 13 trustee.
>
>     c. Not later than the initial date set for the § 341 meeting of creditors, enter into a wage order or an Electronic Funds Transfer (EFT) Order in the form approved by the Court.
>
>     d. As additional adequate protection for the interest of the lien holder(s), the lien holder(s) are granted a claim pursuant to

§ 503(b)(1). This lien is intended to be of the type described in
§ 507(b) of the Bankruptcy code. The amount of the claim is equal
to 1.5% of the value of the vehicle as of the petition date. The
adequate protection payments shall be calculated by the chapter 13
trustee based on the average of the NADA retail and wholesale
values, unless the Court orders otherwise.

2. The debtor or any other party in interest may object to this order within 10
days of its entry. If a timely objection is filed, an evidentiary hearing will be
conducted at the next chapter 13 panel. The objecting party is ordered to provide
notice of the hearing date, attend the hearing and present evidence in support of
the objection.

The vehicle lenders and the debtors in these cases were properly served.  No objections to the

adequate protection orders were filed.  Consequently, the debtors and the creditors have accepted

the adequate protection as ordered by the Court.

**Priority Status of Adequate Protection Payments**

The Court must determine the relative priority between adequate protection payments to

car lenders and payments to debtors' counsel.  The Court concludes that (1) both types of

payments have administrative priority; and (2) adequate protection payments are senior in

priority to payments to debtors' counsel.

*Administrative Claims*

In analyzing the priorities described in BLR 4001(e)(2), this Court begins with 11 U.S.C.

§ 503(b)(1)(A).  That section states:

(b) After notice and a hearing, there shall be allowed administrative expenses,
other than claims allowed under section 502(f) of this title, including –

(1)(A) the actual, necessary costs and expenses of preserving the
estate....

11 U.S.C. § 503(b)(1)(A).

Section 503(b) lists eight additional circumstances that may be included as administrative

claims.  Among these are "compensation and reimbursement awarded under section 330(a) of

this title." 11 U.S.C. § 503(b)(2). This includes debtor's attorney's fees. The terms "include"
and "including" are not terms of limitation. 11 U.S.C. § 102(3). Administrative priority may be
granted to appropriate claims that are not explicitly enumerated in the categories. As stated in
Collier on Bankruptcy:

> The court might well conclude that there are to be allowed as administrative
> expenses claims not necessarily precisely covered by the provisions of § 503(b)
> itself but which could fall into any of the phrases described in the subsections of
> § 503(b). Thus, what constitute actual and necessary costs and expenses of
> preserving the estate might well be opened to judicial construction....

3 COLLIER ON BANKRUPTCY ¶ 503.03, p. 503-11–503-12 (15th ed. 1980). In the cases presently
under consideration, this Court finds that the phrase "actual, necessary costs and expenses of
preserving the estate" in § 503 includes adequate protection payments paid to enable the debtors
to use their vehicles. Debtors in chapter 13 often need their vehicles to drive to work, which in
turn allows for preservation of the estate.

It is generally the policy in bankruptcy to distribute assets of the estate equally to
creditors. *Tr.'s of Amalgamated Ins. Fund v. McFarlins*, 789 F.2d 98, 100 (2d Cir. 1986). Such
a policy requires that any statutory priority be narrowly construed. *Ford Motor Credit Co. v.
Dobbins*, 35 F.3d 860, 865 (4th Cir. 1994); *In re James B. Downing & Co.*, 94 B.R. 515, 519
(Bankr. N.D. Ill. 1988); *McFarlin's*, 789 F.2d at 100. Here, as will be discussed below, the
phrase "actual, necessary costs and expenses of preserving the estate," must be narrowly
construed, and "[t]he modifiers 'actual' and 'necessary' must be observed with scrupulous care."
4 COLLIER ON BANKRUPTCY ¶ 503.06 [1], p. 503-24.1 (15th ed. rev. 2005).

Accordingly, for an adequate protection payment to be entitled to administrative status,
the payment must relate to the

> *actual use* of the creditor's property by the debtor, thereby conferring a *concrete
> benefit* on the estate before a claim is allowable as an administrative expense.

> The court's administrative expense inquiry centers upon whether the estate has received an *actual benefit, as opposed to the loss a creditor might experience by virtue of the debtor's possession of its property.*

*Ford Motor Credit Co.,* 35 F.3d at 866 (quoting *In re ICS Cybernetics, Inc.,* 111 B.R. 32, 36 (Bankr. N.D.N.Y. 1989))(emphasis in original).   *Accord Toma Steel Supply, Inc. v. Transamerican Natural Gas Corp. (In re Transamerican Natural Gas Corp.),* 978 F.2d 1409, 1419 (5th Cir. 1992)("The purpose of the benefit analysis under § 503 is to determine whether the estate received a benefit—not whether the estate was harmed."); *In re J.A.V. Ag., Inc.,* 154 B.R. 923, 929 (Bankr. W.D. Tex. 1993)("To be entitled to administrative claim status, the claim must arise from a debt incurred post-petition, in connection with a transaction between the claimant and the trustee or debtor-in-possession, and which benefits the debtor in operation of its business.")

In *Toma Steel Supply,* the Fifth Circuit articulated its interpretation of "actual use and benefit." The chapter 11 debtor in that case, TransAmerican, was a natural gas company that bought well-casings from Toma post-petition. Transamerican subsequently experienced five natural gas well failures. Transamerican objected to Toma's right to administrative priority, citing the possibility that the Toma well-casings were faulty. The Court rejected this approach and found that the right to administrative priority under § 503(b)(1) was not related to any harm that may have befallen the estate. Rather, the proper focus in the determination was whether the administrative claim arose from a transaction with the debtor-in-possession, and whether the goods supplied enhanced the debtor's ability to function as a going-concern. *Toma,* 978 F.2d at 1416. Toma proved its casings allowed Transamerican to continue post-petition well drilling, completion, and operation. This established a prima facie case for administrative priority. *Id.* at 1416-17.

In a chapter 13 case, the debtor has the responsibility of making plan payments for the benefit of all creditors. In order to meet this obligation, the debtor usually must use an estate automobile for the purpose of transportation to and from work. Vehicles also allow for most families to buy basic necessities such as food and clothing. Actual use of the vehicle provides a direct benefit to the estate in the form of continued payments when the car is used to facilitate work. There are, of course, exceptions to this general rule. Accordingly, BLR 4001(e)(3) allows any party in interest (including the chapter 13 trustee) to object to the adequate protection award. Such an objection might be appropriate if a vehicle were not necessary to the debtor's chapter 13 case. However, in the cases under consideration, no objections were filed by any party in interest. Hence, the Court concludes that the secured lender believed that the order provided it with adequate protection, and the debtor, chapter 13 trustee and other creditors found the award of adequate protection appropriate.

In contrast to the benefit that actual use provides to the estate, actual use of the vehicle produces a direct detriment to the creditor with an interest in the vehicle. Actual use of a vehicle causes depreciation. This depreciation in the actual value of the collateral hurts a creditor's interest if a creditor is relying on collateral to secure its claim. The Supreme Court articulated this principle in *In re Timbers*, 484 U.S. 365 (1988). The Court stated that a creditor's interest in property includes a right "to have the security applied in payment of the debt upon completion of the reorganization" and it is well established that "that interest is not adequately protected if the security is depreciating during the term of the stay." 484 U.S. at 370.

In summary, the holder of a lien on a vehicle has a protectable interest. When the vehicle depreciates through use, the lien holder must be protected. Often times, in a chapter 13, the particular use is one that provides for the actual, necessary costs and expenses of preserving the

estate. In such a case, BLR 4001(e)(2) protects the lien holder with various forms of adequate protection. As set forth above, the local rule is not intended to fit every circumstance. However, in these three cases, no party exercised its right to challenge the appropriateness or sufficiency of the adequate protection. Consequently, the adequate protection claim provided by BLR 4001(e)(2) receives administrative priority under § 503(b), as does the debtor's attorney's claim for fees.

### Priority of Unpaid Chapter 13 Attorney's Fees

Debtors' counsel argues that its claim for fees should be paid before a creditor's claim for adequate protection. However, there is no support for this proposition in the Code. Debtors look to § 1326(b)(1) as the source of priority of their fee claim. That section states that "[b]efore or at the time of each payment to creditors under the plan, there shall be paid any unpaid claim of the kind specified in § 507(a)(2) of this title...." 11 U.S.C. § 1326(b)(1). To be sure, allowed counsel's fees under § 330(a)(4)(B) are entitled to § 507(a)(2) priority. *See* 11 U.S.C. § 503(b)(2). However, debtors ignore the possibility that other claims also fall within § 507(a)(2). It is often assumed that this section pertains to attorney's fees and nothing else. Such an assumption is wrong. As set forth above, adequate protection payments are also entitled to § 507(a)(2) priority.

Section 507(b) provides a definitive answer to the debtors' argument that their fees should be paid ahead of adequate protection payments. That section states:

> If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(2) of this section arising from the stay of execution against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

14

11 U.S.C. § 507(b).

The Congressional Statements to the Reform Act of 1978 state the meaning of the section with clarity:

> Subsection (b) provides that to the extent adequate protection of the interest of a holder of a claim proves to be inadequate, then the creditor's claim is given priority over every other allowable claim entitled to distribution under section 507(a).

124 Cong. Rec. H11095 (daily ed. Sept. 28, 1978); S17411 (daily ed. Oct. 6, 1978)(remarks of Rep. Edwards and Sen. Deconcini).

The priority established by § 507(b) is often referred to as "superpriority" because it places § 507(b) claims above all others within § 507(a)(2). In order to qualify for such superpriority, § 507(b) has often been viewed as describing a three prong test. *In re Greenwald*, 205 B.R. 277, 277 (Bankr. D. Colo. 1997); 4 COLLIER ON BANKRUPTCY ¶ 507.12 [1], p. 507-89 (15th ed. rev. 2005). First, adequate protection must have been provided by the trustee under §§ 362, 363, or 364. Second, a creditor must have a claim under § 507(a)(2). Finally, the protection afforded by the trustee under §§ 362, 363, or 364, must prove to be inadequate.

In each of these chapter 13 cases, a creditor with a vehicle lien was entitled to adequate protection via § 363(e) and each of these creditors holds a claim under § 507(a)(2) via § 503(b)(1)(A). If attorney's fees are paid ahead of the adequate protection payments, then adequate protection fails; the funds that provide the adequate protection would be paid to someone besides the protected lender. The three prong test is satisfied. Adequate protection payments are properly granted superpriority by BLR 4001(e).

As detailed above, in the cases under consideration, and all other chapter 13 cases in the Southern District of Texas, an order allowing for use of estate vehicles subject to adequate

protection is issued.  Provided there is no objection, the order awards adequate protection equal to the estimated depreciation of 1.5% per month.  When a case is dismissed, a debtor has already used the estate's vehicle.  By definition, such use means that the vehicle lien holder has lost 1.5% of the vehicle's value per month.  That lender has received nothing on its lien; its interest in the property has not been protected.  The lender is entitled to payment.

In the case of confirmation, the logic is the same.  If the estate has sufficient funds, it can pay debtor's counsel and simultaneously pay adequate protection.  Practically speaking, though, estate funds are often so limited that a lump sum payment to a protected lien holder and a debtor's attorney cannot be made simultaneously.  If the debtor's lawyer is paid from such limited funds first, then the depleted estate may be unable to satisfy the § 363(e) lien, and the adequate protection guarantee will have failed.  Such an outcome would call for the "inequitable tax[ing of] the creditor with the burden of the court's error [since] the judicially determined adequate protection [has proven] to be 'inadequate.'" *In re Cheatham*, 91 B.R. 382, 387 (Bankr. E.D. N.C. 1988).  This is anathema to 507(b), which "is an attempt to codify a statutory fail-safe system in recognition of the ultimate reality that protection previously determined the 'indubitable equivalent' ... may later prove inadequate." *In re Becker*, 51 B.R. 975, 979 (Bankr. D. Minn. 1985)(quoting *In re Marine Optical, Inc.*, 10 B.R. 893, 894 (Bankr. D. Mass. 1981))(internal quotations removed).

It is convenient to conceptualize the problem of adequate protection failure in the case of confirmation in terms of cent-by-cent payout by the trustee.  For example, assume that the trustee is holding $500.00 of estate cash.  The debtor's lawyer is due $300.00 and a vehicle lien holder has a court ordered BLR 4001(e)(2) adequate protection right in the amount of $300.00.  Under § 507(b), the issue is whether payment to the debtor's lawyer as a priority over the vehicle lender

would cause the vehicle lender's adequate protection to fail. If the debtor's argument regarding § 1326(b)(1) is correct, then the trustee would distribute money exclusively to the debtor's counsel until the debtor's counsel were paid in full. If the Court looks at a snapshot after the distribution of the first $200.00, the trustee would be holding $300.00 and there would be claims of $100.00 by debtor's counsel and of $300.00 by the vehicle lender. Upon payment of the next one cent to counsel, adequate protection fails. The trustee would only be holding $299.99, an amount inadequate to protect the vehicle lender's $300.00 superpriority claim.

Section 1326(b)(1) is often misconstrued. It does not set forth that debtor's counsel is paid first. It merely states that § 507(a)(2) claims are paid before other claims are paid. When adequate protection payments are required and entitled to administrative priority, they are claims that fall within the ambit of § 1326(b)(1).

Of course, counsel's claim for fees is also entitled to an administrative priority within the gambit of § 1326(b)(1). Neither § 1326(b)(1) nor § 507(a)(2) establish a specific priority for claims that are governed by those sections. However, other sections of the Bankruptcy Code establish the appropriate priority. As set forth above, if adequate protection has failed, priority is governed by § 507(b) that gives the vehicle lender priority over all other § 507(a)(2) claims.

If adequate protection has not yet failed and the trustee is making normal distributions, the car lender's adequate protection payments would still take priority. Section 1325(a)(5)(iii)(II) explicitly requires payments that are sufficient to provide adequate protection. Section 363, BLR 4001, the debtor's proposed plan, and this Court's initial order all require the adequate protection payments to be made to the lender as a first priority. The Court has already explained the application of § 363 and BLR 4001. Paragraph 5 of the debtors' proposed chapter 13 plans explicitly provide that "If the monthly payment proposed in the plan is less than the

amount of the adequate protection payment ordered in this case, the actual payment will be the amount of the monthly adequate protection." This requires a full adequate protection payment to the creditor. There is no allowance or provision for first paying debtor's counsel. Finally, this Court's initial order provides that "[a]s additional adequate protection for the interest of the lien holder(s), the lien holder(s) are granted a claim pursuant to § 503(b)(1). This lien is intended to be of the type described in § 507(b) of the Bankruptcy Code."

This belt and suspenders approach puts it beyond peradventure that the car lender's adequate protection payments are senior in priority to the payments to debtor's counsel. Of course, once the car lender is current on its adequate protection payments, the payments to the debtor's counsel may begin.

**Appropriate Valuation for BLR 4001(e)(2)**

Having determined the priority of certain adequate protection claims, the court now turns its attention to the amount of such payments. The relevant portion of BLR 4001(e)(2) states that a lien holder will receive a § 507(b) claim "in an amount equal to 1.5% of the value of the vehicle for each 30 days that elapses from the date of the adequate protection order." BLR 4001(e)(4) defines the appropriate value, stating:

> For purposes of valuation, the vehicle value will be determined as of the date of the filing of the chapter 13 petition. In determining the principal amount due to the lien holder under the plan, the § 507(b) payments will be (i) deducted from the value of the vehicle, if the value of the vehicle is less than the lien, resulting in a Confirmation Date Value; and (ii) applied to interest if the value of the vehicle is greater than the lien. If the value of the vehicle is less than the lien, interest will begin to accrue on the confirmation date based on the Confirmation Date Value.

The order issued in this case further provided:

> As additional adequate protection for the interest of the lien holder(s), the lien holder(s) are granted a claim pursuant to § 503(b)(1). This lien is intended to be of the type described in § 507(b) of the Bankruptcy code. The amount of the claim is equal to 1.5% of the value of the vehicle as of the petition date. The

18

adequate protection payments shall be calculated by the chapter 13 trustee based on the average of the NADA retail and wholesale values, unless the Court orders otherwise.

Nuvell argues that the 1.5% adequate protection reserve should be based on the total proof of claim amount, as filed by the creditor, rather than on the actual collateral value. In this case, the answer is clear. The adequate protection order states that the 1.5% is based on the car's value as calculated by averaging the NADA retail and wholesale values. The 1.5% is not based on the car's debt. Parties were afforded the opportunity to object to this procedure. The order issued in this case provides:

The debtor or any other party in interest may object to this order within 10 days of its entry. If a timely objection is filed, an evidentiary hearing will be conducted at the next chapter 13 panel. The objecting party is ordered to provide notice of the hearing date, attend the hearing and present evidence in support of the objection.

No party filed an objection to the order. The deadline for objecting has passed. Accordingly, the issue in this case is resolved.

Additionally, the order is substantively correct. The value of the car is the value against which adequate protection must be measured.

The purpose of adequate protection is to assure that the lender's economic position is not worsened because of the bankruptcy case. An example may assist in the explanation. Assume that a debtor has an automobile with a fair market value of $20,000 and that the vehicle is declining in value by $300.00 per month. If the car lender is owed $22,000, it has a $22,000 claim, but the security for its claim is only declining by $300 per month. If the car lender is owed $30,000, it has a $30,000 claim, but the value of the car is still declining by only $300. Nuvell asks this Court to apply 1.5% monthly depreciation to the amount owed rather than to the car's value. This would distort the adequate protection goal of protecting a creditor's interest in collateral. Nuvell's approach calls for protecting a creditor's interest in a claim rather than its

19

interest in the collateral. The two are not the same, and protection of the claim is not sanctioned by the Code.

*Timbers* makes this last point clear. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assoc.'s, Ltd.,* 484 U.S. 365 (1988). In that case, the petitioner, an undersecured claimant, was seeking to receive interest on its collateral pending a lift of the automatic stay. In analyzing the phrase "interest in property" as it applies under § 361(1) and (2) (the adequate protection sections), the Court looked to other uses of the phrase throughout the Code. *Id.* at 372. Section 506 provides how the amount of a secured claim is determined by stating that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ...." 11 U.S.C. § 506(a). *Timbers* concluded that "[t]he phrase 'value of such creditor's interest' in § 506(a) means 'the value of the collateral.' ... We think the phrase 'value of such entity's interest' in § 361(1) and (2), when applied to secured creditors, means the same." *Id.* From this it is clear that the interpretation suggested by Nuvell would not only ignore reality, but would also ignore the teachings of *Timbers.*

It is, of course, true that for the purposes of plan confirmation and plan treatment, a car lender with a purchase money lien that was incurred within the 910 day period preceding the date of the filing of the petition has a secured claim for the full amount of the lender's claim and § 506 does not apply to the claim. Secured claimants have the right to the treatment specified in § 1325(a)(5) of the Bankruptcy Code. Those rights include payment, with interest, of the full amount of the secured creditor's claim. They do not include the right to an adequate protection payment that ignores economic reality.

Indeed, Nuvell makes no suggestion as to how its economic interest requires any additional "adequate protection." When Congress adopted BAPCPA, it could have required secured debt payments to be something other than "adequate." By continuing to utilize the word "adequate," Congress mandated that the Court determine an amount based on economic reality in a particular case. The Court declines to ignore the concept of adequacy in finding the correct amount of "adequate protection."

Pursuant to § 1325, the Court will not utilize § 506 to determine the amount of adequate protection. Rather, the Court will apply the term without reference to § 506. In order to determine the adequate protection due to a lender, the Court must examine economic reality with respect to the lender's collateral. In these cases, the economic reality is that the collateral value is declining based on the actual value of the car rather than based on the amount of the claim against the car.

**Equal Monthly Payments, Graduated Plans and Adequate Protection**

The Court now analyzes what payments are controlled by the equal payment provision of the Code, and how the provision interacts with the rest of the Code. The practical operation of 11 U.S.C. § 1325(a)(5)(B)(iii)(I) and (II) is a question of first impression for this Court, and also a question with profound implications for chapter 13 plans. The Court has been unable to locate any decisions that directly address this equal payment issue.

Counsel for DaimlerChrysler and Nuvell argue that the equal payment provision of § 1325(a)(5)(B)(iii)(I) requires equal payments beginning from the effective date of the plan (the date of confirmation) and continuing for the life of the plan. It was suggested during oral arguments that any deviation from this interpretation would render the provision meaningless. Counsel for DaimlerChrysler argued that a deviation from equal payments starting day one could

21

lead to a patchwork of equal payment periods. Finally, counsel for DaimlerChrylser argued that if plan payments do not begin in month one, but adequate protection payments continue, then plan payments would have to be equal to the adequate protection payments made after confirmation.

The equal payment provision does not state that its requirements must be met beginning in month one of the plan. Nor does the section state that payments must be equal "as of the effective date of the plan." In contrast, the immediately preceding section of § 1325(a)(5)(B)(ii) does use such language. That section states that "Except as provided in subsection (b) the court shall confirm a plan if ... with respect to each allowed secured claim provided for by the plan ... the plan provides that ... the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim...." 11 U.S.C. § 1325(a)(5)(B)(ii). While perfectly aware of its drafting options, Congress wrote "[I]f ... property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts[.]" 11 U.S.C. § 1325(a)(5)(B)(iii)(I). Most importantly, subsection 1325(a)(5)(A)(iii)(II) explicitly requires that payments be not less than the amount to provide adequate protection "during the period of the plan." No similar language exists in subsection (I). The Court understands this clause to require payments to be equal once they begin, and to continue to be equal until they cease.[4] This understanding is also supported by Collier on Bankruptcy:

> There also does not seem to be any requirement that the equal monthly amounts extend throughout the plan. A debtor may, for example provide for equal monthly amounts to be distributed to a particular secured creditor for the first 24 months of a 36 month plan or, if the requirement of providing adequate protection is met, the last 24 months of a 36 month plan.

---

[4] Although raised by the parties as a hypothetical, the issue of how the equal payment provision must be applied in a plan modification is beyond the scope of the disputes in these cases. There is no motion for a plan modification before the Court and the Court declines to issue an advisory opinion.

8 COLLIER ON BANKRUPTCY ¶ 1325.06[3][b][ii][A], p. 1325-39 (15th ed. rev'd 2006).

DaimlerChrysler and Nuvell's argument that payments to a creditor must be equal for all months during the life of the plan fails to withstand scrutiny. At the hearing on this matter, there were at least two dates at which the creditors' argument failed. First, DaimlerChrysler argued that upon the date of confirmation it should receive a lump sum payment equal to the difference between the adequate protection amount and the scheduled plan payments. This, DaimlerChrysler argued, would equalize the payments under the plan, fulfilling the equal payment provision. However, the argument fails if the Court applies this logic to adequate protection provided for under a plan. A lump sum payment would make all subsequent payments unequal to the lump sum payment. DaimlerChrysler cannot have it both ways—it cannot insist on equal payments and then ask for a lump sum in order to provide retroactive equalization.

Second, Nuvell's argument that plan payments must be equal throughout the life of the plan fails because a creditor cannot insist on continued payments once principal and interest are fully paid. If Nuvell's claim were fully paid after forty-eight months and the plan was a sixty month plan, Nuvell's interpretation would render the plan unconfirmable. In essence, Nuvell's interpretation would mean that every car lender must finance every car for the life of every plan. In the cases under consideration, the parties appear to acknowledge that the equal payment provision terminates upon full payment. This understanding demonstrates that the "equal monthly amounts" are not throughout the entire period of the plan. It is possible that Congress intended to stretch payments out for an additional period to assure that the last payment would be made in the last month of the plan's term. However, because Congress did not dictate either a beginning or an ending point for the payments, the Court declines to impose such an interpretation with respect to the termination of payments.

The correct reading of the equal payment provision is that suggested by the debtors. Namely, the equal payment provision requires that payments be level once they begin and terminate once the lender is fully paid.  Exactly when these level payments begin is case-specific.  Such an interpretation does not render portions of the Code practically unworkable, as does that suggested by the creditors.  Rather, it places the equal payment provision cohesively into the Title 11 scheme, while honoring the statute as written.

Under this interpretation of the equal payment provision, DaimlerChrysler's predicted patchwork of equal payment periods cannot occur.  There is only one period of payment, dating from the first scheduled payment on a secured claim to the date of full satisfaction.  Throughout this period, insofar as periodic payments are to be made, "such payments shall be in equal monthly amounts."  11 U.S.C. § 1325(a)(5)(B)(iii)(I).

While equal payment does not need to start in month one of a plan, adequate protection does.  DaimlerChrysler and Nuvell object to the 1.5% adequate protection payment of BLR 4001(e)(2); they argue that it conflicts with the requirement of equal payments as set forth in § 1325(a)(5)(B)(iii)(I).  In other words, plan payments under § 1326(a)(1)(A) are likely to be different from adequate protection.  The Court finds that adequate protection payments are not meant to be considered when fulfilling the requirements of the equal payment provision.

Section 1325, as amended, has created a confirmation requirement regarding adequate protection payments.  Section 1325(a)(5)(B)(iii) states that plan payments shall consist of equal monthly payments, and no payment shall be less than the amount of adequate protection:

> (5) with respect to each allowed secured claim provided for by the plan –
>      (B)(iii) if –
>              (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

> (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan;

The uniform plan in the Southern District of Texas provides that "[i]f the monthly payment proposed in the plan is less than the amount of the adequate protection payment ordered in this case, the actual payment will be the amount of the monthly adequate protection payment." Accordingly, although the parties are free to challenge the adequacy of the amount of adequate protection established by the Court, the plan—by definition—provides an amount at least equal to adequate protection.

The objecting creditors ask the Court to read § 1325(a)(5)(B)(iii)'s subsections to mandate that equal payments must be in the same amount as adequate protection payments. The Court finds this interpretation—forcing the reading of the two subsections as imposing identical dollar amounts—to be mathematically untenable when read in the context of the Bankruptcy Code as a whole. An adequate protection payment that occurs after the plan is confirmed cannot set the standard as to what the equal payments will be once they begin.

Consider the case of a quickly depreciating asset, such as a new truck. Assume that, after notice and hearing, the Court sets a $600.00 initial monthly adequate protection payment. There can be no question but that the lender is entitled to full adequate protection. If the remaining balance owed on the truck is $25,000, and if 60 months of $600.00 payments were made (with an 8% annual interest rate), there would be an overpayment beginning in month fifty. By month sixty the debtor would have overpaid the claim by $6,839.79. (See Attachment A).

Conversely, if § 1325(a)(5)(B)(ii)(II) is read as setting an independent adequate protection amount, and not an equal payment standard, then the adequate protection payment could be made. Amortizing payments under the plan could be independently established at a

25

level amount which would pay off the car loan at the end of the plan, or sooner, as the Code intends.

There is an additional mathematical reason why the car lender's equal payment/plan-imposed adequate protection interpretation fails. Under BAPCPA, Congress eliminated a great deal of discretion both as to the amount that must be paid into a plan and the amount that must be paid out of a plan. For example, under § 1325(b)(3), Congress dictated a method of calculating disposable income. Moreover, Congress required that certain plans have payments over a sixty-month period—no more and no less. *See* § 1325(b)(4)(A)(ii) (requiring a minimum commitment period of sixty months for certain debtors) and § 1322(d)(2) (requiring a maximum commitment period of sixty months for any debtor). Congress also formulaically measures the amount of the monthly payment that must be made into certain plans. *See* § 1325(b)(3). If a debtor's formulaic disposable income equals $600 per month, then $600 must be paid on a monthly basis for the term of the commitment period.

Section 1326(b)(1) requires that § 507(a)(2) claims be paid before, or at the same time as, the payment of other claims paid by the chapter 13 trustee. These claims include, for example, both adequate protection payments and payments to debtor's counsel. Pursuant to § 1326(b)(1), amounts payable to a car lender in excess of the amount of adequate protection may not be paid until all § 507(a)(2) payments have been made.

The table in Attachment B reflects payments that would be required under the following assumptions (all of which are routine in a chapter 13 bankruptcy case in this district) if the term "equal monthly amounts" means equal monthly amounts during the term of the loan amortization:

> (i)      a debtor with monthly disposable income under § 1326(b)(1) of $600 per month;

26

(ii)    a chapter 13 trustee with an authorized fee of 10% pursuant to 28 U.S.C. § 586(e), an amount that is paid out of the $600 monthly receipt pursuant to 28 U.S.C. § 586(e)(1)(2);

(iii)   an undersecured car lender with a $20,000 claim payable at an 8% annual interest rate and a $300 per month decline in the value of its collateral;

(iv)    a debtor's counsel with an unpaid, but approved fee of $2,000;

(v)     general unsecured claims totaling $40,000.

Under DaimlerChrysler and Nuvell's interpretation, in which the "equal monthly payments" must begin in the first month of the plan, the math does not work.  Such an interpretation, under the assumptions above, would produce the illogical result shown in Attachment C.

The distribution scheme set forth in Attachment C violates the plain language of § 1326(b)(1) in the first month of the plan.  Section 1326(b)(1) prohibits the chapter 13 trustee from making any payments to creditors under the plan until the § 507(a)(2) payments have been made: "Before or at the time of each payment to creditors under the plan, there shall be paid ... any unpaid claim of the kind specified in section 507(a)(2) of this title."  11 U.S.C. § 507(a)(2).  This means that a creditor is not to receive a distribution under the plan unless certain priority claims are paid first, or simultaneously.

The Court recognizes that there is disagreement as to whether § 1326(b)(1) requires that § 507(a)(2) claims be paid *in full* prior to payment of other claims.  There are a number of courts that hold that a partial payment of § 507(a)(2) costs is all that is required by § 1326(b)(1).  *See In re Balderas,* 328 B.R. 707, 717 (Bankr. W.D. Tex. 2005);  *In re Pappas & Rose, P.C.,* 229 B.R. 815, 820 (Bankr. W.D. Okla. 1998);  *In re Cook,* 205 B.R. 437, 443 (Bankr. N.D. Fla. 1997).

However, this Court finds the reasoning of *In re Harris*, 304 B.R. 751, 757-58 (Bankr. E.D. Mich. 2004), to be persuasive. Section 1326(b)(1) provides that "[b]efore or at the time of each payment to creditors under the plan, there shall be paid ... any unpaid claim of the kind specified in section 507(a)(2) of this title[.]" 11 U.S.C. § 1326(b)(1). The statute refers only to payment of any unpaid claim. There is no reference to a partial payment. As *Harris* explains, "[a] partial payment of an administrative expense claim would not satisfy § 1326(b)(1) because there would still remain an unpaid administrative claim." *Id* at 757. *Harris* interprets the language "before or at the time of each payment," to address situations in which administrative costs are paid in full and there is money remaining for other creditors. *Id.* In such a case, the trustee may immediately disburse such funds—he need not wait until the next monthly distribution.

There is a dichotomy in the language of the statute that supports the interpretation in *Harris.* The statute mandates that any unpaid § 507(a)(2) claim be paid before there are payments to other creditors under the plan. "[P]ayment to creditors under the plan" refers to periodic partial payments on claims. Conversely, "there shall be paid any unpaid claim" mandates full payment of the claim. This contrasting terminology requires full payment of any administrative claim before (or at the time of) general payments should commence under a chapter 13 plan. *See Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 357 (2005); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 (2004).

The legislative history of § 1326 also supports the understanding that § 507(a)(2) claims are to be paid first and in full. The House Report for The Bankruptcy Reform Act of 1978 states that "Subsection [1326(b)(1)] requires that before or at the time of each payment any outstanding administrative expenses and any percentage fee due for a private standing chapter 13 be paid in

full." H.R. REP. NO. 95-595, 430 (1978).  The Senate Report from the same session of Congress states that "Section 1326 supplements the priorities provisions of section 507.  Subsection [1326(b)(1)] requires accrued costs of administration and filing fees, as well as fees due the chapter 13 trustee, to be disbursed before payments to creditors under the plan."  S. REP. NO. 95-989, 142 (1978).

In the distribution scheme advocated by DaimlerChrysler and Nuvell, the car lender is paid $105.53 per month on top of its § 507(a)(2) adequate protection payment of $300.00.  This $105.53 per month would be paid before the time that the debtor's counsel is paid pursuant to § 1326(b)(1)—a result contrary to the Code.

Moreover, Congress mandated that adequate protection payments must be paid "during the period of the plan."  § 1325(a)(5)(A)(iii)(II).  Had Congress meant to require that equal payments would also be throughout the entire plan period, it could have said so and redrafted § 1326(b)(1).  Congress did not redraft that section, nor did Congress place such language in § 1325(a)(5)(A)(iii)(I).  The Court declines to give the statute an interpretation that renders the statute mathematically impossible.  If Congress had not controlled the funds paid into the plan, one could argue that the debtor should be required to make an extra contribution in order to make the plan feasible.  But, that is not the case under BAPCPA.  Because DaimlerChrysler and Nuvell's interpretation renders BAPCPA mathematically impossible, the Court concludes that DaimlerChrysler and Nuvell's interpretation could not reflect Congress' intent.

The Court does not believe that this was mere legislative oversight.  Instead, the Court believes that the purpose of the two sections should be read in light of the actual or perceived abuses that the Court believes were intended to be remedied by these sections.

Two practices existed before BAPCPA that were viewed, by many, as abusive. First, chapter 13 plans were being confirmed by bankruptcy courts that deprived car lenders of any payments for a number of months. Prior to its amendment, § 1325(a)(5) did not explicitly require adequate protection payments—a chapter 13 plan could "provide payment to secured claim holders in an amount not sufficient to keep pace with depreciation of the underlying collateral." Hon. Keith Lundin and Henry Hildebrand, III, *Section by Section Analysis of Chapter 13 After BAPCPA,* SLO68 ALI-ABA 65, 94 (2005). Or a plan could provide no payment at all for a period of time. Forcing "creditors with a security interest ... to await payment on their secured claims ... often resulted in uncompensated depreciation of collateral during the pendancy of a chapter 13 case. In the worst-case scenario, a creditor could wait as long as twenty-four months before receiving any distributions on an allowed secured claim." Richardo Kilpatrick, *Selected Creditor Issues Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,* 79 Amer. Bankr. L.J. 817, 836 (2005).

To protect its interest, a lender could object to confirmation and argue the adequate protection issue with no assurance of success. If the objection failed, and the first payment to the car lender was scheduled for month eight, the debtor could use the car for the first seven months of the plan with no payment to the car lender. Pursuant to § 1307(b), the debtor could convert his case at any time to a case under chapter 7. Under this scenario, an abusive debtor could manipulate the system and get free use of a quickly depreciating asset without making adequate protection payments. When the case was converted to a case under chapter 7, the lender could repossess its depreciated asset, but the debtor would be discharged of his obligation to the car lender, after having had free use of the car for many months. Section 1325(a)(5)(A)(iii)(II) now

protects against that abuse by assuring—through adequate protection payments—that the lender's position will not worsen during the initial stages of a chapter 13 case.

The second perceived abuse was for a chapter 13 plan to propose a balloon payment at the end of the sixty month term of the plan. The interim payments would not fully amortize the car loan. At the end of the term, the car would be worth less than the balloon payment that was due. The lender would be left only with its depreciated automobile as collateral. The lower monthly payments allowed a debtor to prove that the debtor could make the monthly payments under his proposed budget. All of the risk was placed on the car lender. Section 1325(a)(5)(A)(iii)(I) appears to be intended to address this balloon payment issue. By requiring full amortization over the life of the traditional plan payments, the debtor's feasibility burden was increased and the car lender's risk decreased.

From the perspective of the problems being addressed by Congress, the Court finds it meaningful that adequate protection was required throughout the life of the plan, but that equal payments are required only during the plan's amortization period. Any other interpretation mandates a mathematical impossibility.

**Plan Interest Rate for Vehicle Lenders**

Prior to October 17, 2005, § 506 bifurcated an undersecured automobile lender's claim into two claims—one secured and one unsecured. The secured claim was the actual value of the vehicle, while the unsecured claim was the difference between that actual value and the amount owed on the vehicle. If subject to a plan, the secured portion of the bifurcated claim was paid in full, while the unsecured portion received the same treatment as others in its class, i.e. a percentage payout on the amount, often resulting in a creditor receiving pennies on the dollar. This is commonly referred to as "lien stripping" or "stripping down a claim." Prior to BAPCPA,

§ 1325(a)(5)(B) provided for plan confirmation if "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(amended October 17, 2005). This is commonly referred to as "the 'cram down option' because it may be enforced over a claim holder's objection." *In re Till*, 541 U.S. 465, 468-69. The Supreme Court, in *Till*, mandated a prime-plus formula for interest rates in the case of cramming down a claim. Such an approach begins with the national prime rate and then adjusts that rate, typically upwards, on account of the risk of nonpayment. This modified prime-plus approach is often described as the "*Till* rate."

Effective October 17, 2005, BAPCPA restricted the ability of debtors to bifurcate a claim in the case of automobiles financed with certain purchase money security interests. *In re Ezell,* 2006 WL 598142 (March 13, 2006); *In re Johnson,* 337 B.R. 269, 273 (Bankr. M.D.N.C. 2006); *In re Robinson,* 338 B.R. 70, 73-74 (Bankr. W.D. Mo. 2006). This was accomplished by adding the following paragraph after 11 U.S.C. § 1325(a)(9):

> For the purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

BAPCPA's drafters did not assign this paragraph a section or subsection number, and it does not seem to relate to § 1325(a)(9), which it follows. For convenience, this Court will refer to the paragraph as "the 910-paragraph" due to its substance. Before further exploring the applicability of the *Till* rate to 910-paragraph claims, the Court finds it necessary to address the more general treatment of these claims.

The 910-paragraph provides that § 506 does not apply to a purchase money security interest in a vehicle acquired for personal use within 910 days preceding the filing of a petition. Section 506 defines what a secured claim is under the Bankruptcy Code. Section 506 states, in relevant part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in such property, or to the extent of the amount subject to setoff, as the case may be ....

11 U.S.C. § 506(a)(1).

If this section does not apply, then the treatment of a 910-paragraph claim appears unclear. Is the claim secured or unsecured? At least two commentators have noticed this dilemma:

> There are claims-allowance issues related to [the 910-paragraph] addition to § 1325 since it refers to § 506 not applying to a claim described in § 1325(a)(5). Section 1325(a)(5) depends upon a claim being "allowed," and § 506 is the statute governing allowance of secured claims; thus questions will arise to how a creditor can obtain a secured claim.

HON. WILLIAM H. BROWN AND LAWRENCE AHERN, III, 2005 BANKR. REFORM LEGIS. WITH ANALYSIS 2D § 6:35.

And even more directly:

> Language added at the end of section 1325(a) by the 2005 amendments to the Bankruptcy Code removes certain claims from the protections of 1325(a)(5). This new language states that for purposes of section 1325(a)(5), section 506 shall not apply to certain claims. Such claims, therefore, cannot be determined to be allowed secured claims under section 506(a) and are not within the ambit of section 1325(a)(5).

8 COLLIER ON BANKRUPTCY ¶ 1325.06[1][a], p. 1325-28 (15th ed. rev'd 2006).

The court in *In re Carver* also noticed this problem. *In re Carver*, 338 B.R. 521 (Bankr. S.D. Ga. 2006). That court found that "[b]y rendering [§ 506] inapplicable to 910 claims, Congress expressly eliminated the mechanism by which they could be treated as secured claims

under the Chapter 13 plan." *Id.* at 525. *Carver* goes on to invent a new and unique treatment for 910 claims. Relying on § 1111(b) as a guide, the *Carver* court created the "awkward and cumbersome" rule that 910 claims "must receive the *greater* of (1) the full amount of the claim without interest; or (2) the amount the creditor would receive if the claim were bifurcated and crammed down ...." *Id.* at 528. This treatment essentially provides creditors with a hybrid remedy crafted from §§ 506 and 1111(b).

This Court does not agree with the conclusions in *Carver*. Taking 910 claims out of the purview of § 506 does not mean 910 claims are a new and unique class of claims. Furthermore, the Court will not support a judicially crafted treatment of claims with no basis in the Code. The Court finds it unlikely that Congress would create a new, undefined type of claim, and then furnish no guidance as to how such a claim should be handled. Rather, this Court turns to basic principles of Code interpretation and finds that a 910-paragraph claim is an allowed secured claim and may be treated under § 1325(a)(5).

Section 1325(a)(5) applies to "allowed secured claims." Secured claims are generally defined by § 506. Section 506 does not apply to 910-paragraph claims. However, certain statutory interpretive guidelines are well established:

- Terms not defined in the Bankruptcy Code should be given their plain meaning. *U.S. v. Ron Pair,* 489 U.S. 235, 242 (1989)("The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statue will produce a result demonstrably at odds with the intentions of its drafters."(citing *Griffin v. Oceanic Contractors, Inc.* 458 U.S. 564, 571 (1982); (internal quotation marks omitted))).

- When determining property interests under the Code, state laws are to be given effect to whatever extent they do not conflict with the Code. "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.... The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests...." *Butner v.*

> *U.S.,* 440 U.S. 48, 55 (1979); *See also Sturges v. Crowninshield,* 4 Wheat. 122, 4 L.Ed. 529 (1819); *Ogden v. Saunders,* 12 Wheat. 213, 6 L.Ed. 606 (1827); *Stellwagen v. Clum,* 245 U.S. 605 (1918).

The effect of the 910-paragraph is not to make the claims not "secured." Rather, it is to remove the § 506 definition of "secured" from being applicable in § 1325. Accordingly, the Court will apply the plain meaning of "secured"—rather than the Bankruptcy Code's § 506 definition of "secured"—to § 1325. This Court sees no reason to invent a new category of claim when the issue of secured status is easily settled by reference to state law. *Accord In re Montoya,* 2006 WL 931562, *2 (Bankr. D. Utah April 10, 2006) ("The existence of a claim is usually determined by non-bankruptcy substantive law, whereas valuation of that claim is determined by § 506. A purchase money security interest is secured through the parties' contract and applicable perfection statutes and is secured without the operation of the Code.")

Texas has adopted the Uniform Commercial Code Article 9 to address secured transactions. TEX. BUS. CODE §§ 9.101–9.709. 11 U.S.C. 1325(a)(910-paragraph) applies to "a purchase money security interest securing the debt that is the subject of the claim...." 11 U.S.C. 1325(a)(910-paragraph). The Texas Business and Commerce Code, § 9.103, states, in relevant part:

> (a) In this section:
>> (1) "Purchase-money collateral" means goods or software that secures a purchase-money obligation incurred with respect to that collateral.
>> (2) "Purchase-money obligation" means an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used.
> (b) A security interest in goods is a purchase-money security interest:
>> (1) to the extent that the goods are purchase-money collateral with respect to that security interest;

Section § 1.201(35) states:

"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation.

The Court is satisfied that reliance on Texas law makes each of the lenders' claims in these three cases "secured" for the purposes of § 1325.

While the 910-paragraph cited above has limited the ability of debtors to strip down certain claims, nowhere does it (or its legislative history) limit the ability to adjust the interest rate associated with vehicle liens. The *Till* decision primarily sought to ensure that "the property to be distributed to a particular secured creditor over the life of a bankruptcy plan has a total value, as of the effective date of the plan that equals or exceeds the value of the creditor's allowed secured claim...." 541 U.S. at 474. Noting that this presented a challenge in cases where creditors would be paid in a series of payments over time, the Court listed three important considerations that should govern the choice of interest rate. *Id.*

The most relevant of these considerations is the Court's observation that there are numerous provisions within the Bankruptcy Code that require a discounting of a stream of payments to present value. Importantly, the Court stated, "We think it likely that Congress intended bankruptcy judges and trustees to follow essentially the same approach when choosing an appropriate interest rate under any of these provisions." *Id.* The approach that the Supreme Court went on to endorse was a prime-plus rate. This Court reads that call for a consistent approach, and the defining of that approach as the *Till* rate, as providing direct guidance on the particular issue now under consideration.

Centrix argues that the concerns of Congress have recently changed with the implementation of BAPCPA. Centrix argues that Congress has now shifted its focus more towards protection of the creditor in situations where debtors are buying cars "shortly" before filing for bankruptcy. This alleged shift in focus, it is argued, supports the Court's abandonment

of the *Till* rate in 910-paragraph cases.  The Court finds this argument unconvincing.  Congress

had plentiful opportunity to overturn or constrain *Till* in its recent BAPCPA amendments.  It is

even more persuasive that this opportunity was foregone given that the Supreme Court, in *Till*,

wrote "[t]he fact Congress considered but rejected legislation that would endorse the Seventh

Circuit's presumptive contract rate approach, … lends some support to our conclusion…. If we

have misinterpreted Congress' intended meaning of 'value, as of the date of the plan' we are

confident it will enact appropriate remedial legislation." *Id.* at 480.  No remedial legislation has

been enacted, and consequently, this Court will continue to apply the *Till* rate in appropriate

cases.

Every other court that has considered the issue of the appropriate interest rate in 910-

paragraph cases has also applied the *Till* rate.  *In re Fleming,* 2006 WL 770101, *7 (Bankr. E.D.

Mo. March 27, 2006)("A creditor whose claim comes within the 910 Day Car Language

contained in Section 1325(a)(9) of the Bankruptcy Code is entitled to receive post-petition

interest at a current rate determined by an adjustment from the prime rate based on the risk of

nonpayment under *Till*");  *In re Wright*, 333 B.R. 917, 919 (Bankr. M.D. Ala. 2006)("The

BAPCPA amendments to § 1325 simply do not address the issue of the appropriate interest rate

applicable to secured claims under § 1325(a)(5)(B)(ii).  Thus *Till* has not been abrogated by the

BAPCPA amendments"); *In re Robinson*, 338 B.R. 70, 75 (Bankr. W.D.Mo. 2006)("I conclude

that the BAPCPA amendment did not overrule *Till*"); *In re Johnson,* 337 B.R. 269, 273 (Bankr.

M.D.N.C. 2006)("Section 1325(a)(9) prevents a debtor from paying less than the full contract

amount if the debtor chooses to retain the vehicle.  However, pursuant to 1322(b)(2), a debtor

may still modify the term and interest rate of the loan").

**Conclusion**

The Court previously found that the proposed plans in these cases met the requirements of § 1325(a)(1) – (4) and (6) – (9).  Accordingly, the sole obstacles to confirmation were whether the three plans satisfied § 1325(a)(5) and the 910-paragraph.  Based on the foregoing, the three proposed plans meet all requirements for confirmation under § 1325.  Accordingly, confirmation is mandatory.  *In re Foster,* 670 F.2d 478, 486 (5th Cir. 1982).

Separate orders confirming the three plans will be issued.

Signed April 21, 2006.

_____

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

## ATTACHMENT A

| | | | | |
|---|---|---|---|---|
| Principal Owed on Petition Date | | | $25,000.00 | |
| Till Interest Rate | | | 8.00% | |

| Plan Month | Beginning Balance | Plan Payment | Interest | Principal | Ending Balance |
|---|---|---|---|---|---|
| 1 | $25,000.00 | $600.00 | $166.67 | $433.33 | $24,566.67 |
| 2 | $24,566.67 | $600.00 | $163.78 | $436.22 | $24,130.44 |
| 3 | $24,130.44 | $600.00 | $160.87 | $439.13 | $23,691.31 |
| 4 | $23,691.31 | $600.00 | $157.94 | $442.06 | $23,249.26 |
| 5 | $23,249.26 | $600.00 | $155.00 | $445.00 | $22,804.25 |
| 6 | $22,804.25 | $600.00 | $152.03 | $447.97 | $22,356.28 |
| 7 | $22,356.28 | $600.00 | $149.04 | $450.96 | $21,905.32 |
| 8 | $21,905.32 | $600.00 | $146.04 | $453.96 | $21,451.36 |
| 9 | $21,451.36 | $600.00 | $143.01 | $456.99 | $20,994.37 |
| 10 | $20,994.37 | $600.00 | $139.96 | $460.04 | $20,534.33 |
| 11 | $20,534.33 | $600.00 | $136.90 | $463.10 | $20,071.22 |
| 12 | $20,071.22 | $600.00 | $133.81 | $466.19 | $19,605.03 |
| 13 | $19,605.03 | $600.00 | $130.70 | $469.30 | $19,135.73 |
| 14 | $19,135.73 | $600.00 | $127.57 | $472.43 | $18,663.30 |
| 15 | $18,663.30 | $600.00 | $124.42 | $475.58 | $18,187.73 |
| 16 | $18,187.73 | $600.00 | $121.25 | $478.75 | $17,708.98 |
| 17 | $17,708.98 | $600.00 | $118.06 | $481.94 | $17,227.04 |
| 18 | $17,227.04 | $600.00 | $114.85 | $485.15 | $16,741.88 |
| 19 | $16,741.88 | $600.00 | $111.61 | $488.39 | $16,253.50 |
| 20 | $16,253.50 | $600.00 | $108.36 | $491.64 | $15,761.85 |
| 21 | $15,761.85 | $600.00 | $105.08 | $494.92 | $15,266.93 |
| 22 | $15,266.93 | $600.00 | $101.78 | $498.22 | $14,768.71 |
| 23 | $14,768.71 | $600.00 | $98.46 | $501.54 | $14,267.17 |
| 24 | $14,267.17 | $600.00 | $95.11 | $504.89 | $13,762.28 |
| 25 | $13,762.28 | $600.00 | $91.75 | $508.25 | $13,254.03 |
| 26 | $13,254.03 | $600.00 | $88.36 | $511.64 | $12,742.39 |
| 27 | $12,742.39 | $600.00 | $84.95 | $515.05 | $12,227.34 |
| 28 | $12,227.34 | $600.00 | $81.52 | $518.48 | $11,708.86 |
| 29 | $11,708.86 | $600.00 | $78.06 | $521.94 | $11,186.92 |
| 30 | $11,186.92 | $600.00 | $74.58 | $525.42 | $10,661.50 |
| 31 | $10,661.50 | $600.00 | $71.08 | $528.92 | $10,132.57 |
| 32 | $10,132.57 | $600.00 | $67.55 | $532.45 | $9,600.12 |
| 33 | $9,600.12 | $600.00 | $64.00 | $536.00 | $9,064.12 |
| 34 | $9,064.12 | $600.00 | $60.43 | $539.57 | $8,524.55 |
| 35 | $8,524.55 | $600.00 | $56.83 | $543.17 | $7,981.38 |
| 36 | $7,981.38 | $600.00 | $53.21 | $546.79 | $7,434.59 |
| 37 | $7,434.59 | $600.00 | $49.56 | $550.44 | $6,884.16 |
| 38 | $6,884.16 | $600.00 | $45.89 | $554.11 | $6,330.05 |
| 39 | $6,330.05 | $600.00 | $42.20 | $557.80 | $5,772.25 |
| 40 | $5,772.25 | $600.00 | $38.48 | $561.52 | $5,210.73 |
| 41 | $5,210.73 | $600.00 | $34.74 | $565.26 | $4,645.47 |
| 42 | $4,645.47 | $600.00 | $30.97 | $569.03 | $4,076.44 |
| 43 | $4,076.44 | $600.00 | $27.18 | $572.82 | $3,503.62 |
| 44 | $3,503.62 | $600.00 | $23.36 | $576.64 | $2,926.97 |
| 45 | $2,926.97 | $600.00 | $19.51 | $580.49 | $2,346.49 |
| 46 | $2,346.49 | $600.00 | $15.64 | $584.36 | $1,762.13 |
| 47 | $1,762.13 | $600.00 | $11.75 | $588.25 | $1,173.88 |
| 48 | $1,173.88 | $600.00 | $7.83 | $592.17 | $581.70 |
| 49 | $581.70 | $600.00 | $3.88 | $596.12 | ($14.42) |
| 50 | ($14.42) | $600.00 | ($0.10) | $600.10 | ($614.51) |
| 51 | ($614.51) | $600.00 | ($4.10) | $604.10 | ($1,218.61) |
| 52 | ($1,218.61) | $600.00 | ($8.12) | $608.12 | ($1,826.74) |
| 53 | ($1,826.74) | $600.00 | ($12.18) | $612.18 | ($2,438.91) |
| 54 | ($2,438.91) | $600.00 | ($16.26) | $616.26 | ($3,055.17) |
| 55 | ($3,055.17) | $600.00 | ($20.37) | $620.37 | ($3,675.54) |
| 56 | ($3,675.54) | $600.00 | ($24.50) | $624.50 | ($4,300.04) |
| 57 | ($4,300.04) | $600.00 | ($28.67) | $628.67 | ($4,928.71) |
| 58 | ($4,928.71) | $600.00 | ($32.86) | $632.86 | ($5,561.57) |
| 59 | ($5,561.57) | $600.00 | ($37.08) | $637.08 | ($6,198.65) |
| 60 | ($6,198.65) | $600.00 | ($41.32) | $641.32 | ($6,839.97) |

# ATTACHMENT B

| Plan Month | Payment Required by § 1325(b)(3) | Chapter 13 Trustee Fee | Payment to Car Lender (Minimum is Adequate Protection Payment) | Payment to Debtor's Counsel | Balance to General Unsecured Claims | Car Loan Beginning Principal | Car Loan Interest | Portion of Car Loan Payment Attributable to Principal | Car Loan Ending Principal |
|---|---|---|---|---|---|---|---|---|---|
| 1 | $600.00 | $60.00 | $300.00 | $240.00 | $0.00 | $20,000.00 | $133.33 | $166.67 | $19,833.33 |
| 2 | $600.00 | $60.00 | $300.00 | $240.00 | $0.00 | $19,833.33 | $132.22 | $167.78 | $19,665.56 |
| 3 | $600.00 | $60.00 | $300.00 | $240.00 | $0.00 | $19,665.56 | $131.10 | $168.90 | $19,496.66 |
| 4 | $600.00 | $60.00 | $300.00 | $240.00 | $0.00 | $19,496.66 | $129.98 | $170.02 | $19,326.64 |
| 5 | $600.00 | $60.00 | $300.00 | $240.00 | $0.00 | $19,326.64 | $128.84 | $171.16 | $19,155.48 |
| 6 | $600.00 | $60.00 | $300.00 | $240.00 | $0.00 | $19,155.48 | $127.70 | $172.30 | $18,983.18 |
| 7 | $600.00 | $60.00 | $300.00 | $240.00 | $0.00 | $18,983.18 | $126.55 | $173.45 | $18,809.74 |
| 8 | $600.00 | $60.00 | $300.00 | $240.00 | $0.00 | $18,809.74 | $125.40 | $174.60 | $18,635.14 |
| 9 | $600.00 | $60.00 | $300.00 | $80.00 | $160.00 | $18,635.14 | $124.23 | $175.77 | $18,459.37 |
| 10 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $18,459.37 | $123.06 | $305.09 | $18,154.28 |
| 11 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $18,154.28 | $121.03 | $307.12 | $17,847.16 |
| 12 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $17,847.16 | $118.98 | $309.17 | $17,537.98 |
| 13 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $17,537.98 | $116.92 | $311.23 | $17,226.75 |
| 14 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $17,226.75 | $114.84 | $313.31 | $16,913.44 |
| 15 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $16,913.44 | $112.76 | $315.40 | $16,598.04 |
| 16 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $16,598.04 | $110.65 | $317.50 | $16,280.54 |
| 17 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $16,280.54 | $108.54 | $319.62 | $15,960.93 |
| 18 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $15,960.93 | $106.41 | $321.75 | $15,639.18 |
| 19 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $15,639.18 | $104.26 | $323.89 | $15,315.29 |
| 20 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $15,315.29 | $102.10 | $326.05 | $14,989.24 |
| 21 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $14,989.24 | $99.93 | $328.23 | $14,661.01 |
| 22 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $14,661.01 | $97.74 | $330.41 | $14,330.60 |
| 23 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $14,330.60 | $95.54 | $332.62 | $13,997.98 |
| 24 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $13,997.98 | $93.32 | $334.83 | $13,663.15 |
| 25 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $13,663.15 | $91.09 | $337.07 | $13,326.08 |
| 26 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $13,326.08 | $88.84 | $339.31 | $12,986.77 |
| 27 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $12,986.77 | $86.58 | $341.57 | $12,645.20 |
| 28 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $12,645.20 | $84.30 | $343.85 | $12,301.34 |
| 29 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $12,301.34 | $82.01 | $346.14 | $11,955.20 |
| 30 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $11,955.20 | $79.70 | $348.45 | $11,606.75 |
| 31 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $11,606.75 | $77.38 | $350.78 | $11,255.97 |
| 32 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $11,255.97 | $75.04 | $353.11 | $10,902.86 |
| 33 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $10,902.86 | $72.69 | $355.47 | $10,547.39 |
| 34 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $10,547.39 | $70.32 | $357.84 | $10,189.55 |
| 35 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $10,189.55 | $67.93 | $360.22 | $9,829.33 |
| 36 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $9,829.33 | $65.53 | $362.62 | $9,466.70 |
| 37 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $9,466.70 | $63.11 | $365.04 | $9,101.66 |
| 38 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $9,101.66 | $60.68 | $367.48 | $8,734.19 |
| 39 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $8,734.19 | $58.23 | $369.93 | $8,364.26 |
| 40 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $8,364.26 | $55.76 | $372.39 | $7,991.87 |
| 41 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $7,991.87 | $53.28 | $374.87 | $7,617.00 |
| 42 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $7,617.00 | $50.78 | $377.37 | $7,239.62 |
| 43 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $7,239.62 | $48.26 | $379.89 | $6,859.73 |
| 44 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $6,859.73 | $45.73 | $382.42 | $6,477.31 |
| 45 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $6,477.31 | $43.18 | $384.97 | $6,092.34 |
| 46 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $6,092.34 | $40.62 | $387.54 | $5,704.80 |
| 47 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $5,704.80 | $38.03 | $390.12 | $5,314.68 |
| 48 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $5,314.68 | $35.43 | $392.72 | $4,921.96 |
| 49 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $4,921.96 | $32.81 | $395.34 | $4,526.62 |
| 50 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $4,526.62 | $30.18 | $397.98 | $4,128.64 |
| 51 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $4,128.64 | $27.52 | $400.63 | $3,728.01 |
| 52 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $3,728.01 | $24.85 | $403.30 | $3,324.71 |
| 53 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $3,324.71 | $22.16 | $405.99 | $2,918.72 |
| 54 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $2,918.72 | $19.46 | $408.70 | $2,510.03 |
| 55 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $2,510.03 | $16.73 | $411.42 | $2,098.61 |
| 56 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $2,098.61 | $13.99 | $414.16 | $1,684.45 |
| 57 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $1,684.45 | $11.23 | $416.92 | $1,267.52 |
| 58 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $1,267.52 | $8.45 | $419.70 | $847.82 |
| 59 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $847.82 | $5.65 | $422.50 | $425.32 |
| 60 | $600.00 | $60.00 | $428.15 | $0.00 | $111.85 | $425.32 | $2.84 | $425.32 | $0.00 |
| Totals | $36,000.00 | $3,600.00 | $24,535.82 | $2,000.00 | $5,864.18 | | $4,535.82 | $20,000.00 | |

**[$428.15 is the monthly payment required to amortize the remaining balance of the car loan (i.e., $18,459.37) over the remaining 51 months of the plan at an 8% annual interest rate calculated monthly.]**

## ATTACHMENT C

| Plan Month | Payment Required by § 1325(b)(3) | Chapter 13 Trustee Fee | Payment to Car Lender | Payment to Debtor's Counsel | Balance to General Unsecured Claims | Car Loan Beginning Principal | Car Loan Interest | Portion of Car Loan Payment Attributable to Principal | Car Loan Ending Principal |
|---|---|---|---|---|---|---|---|---|---|
| 1 | $600.00 | $60.00 | $405.53 | $134.47 | $0.00 | $20,000.00 | $133.33 | $272.19 | $19,727.81 |
| 2 | $600.00 | $60.00 | $405.53 | $134.47 | $0.00 | $19,727.81 | $131.52 | $274.01 | $19,453.80 |
| 3 | $600.00 | $60.00 | $405.53 | $134.47 | $0.00 | $19,453.80 | $129.69 | $275.84 | $19,177.96 |
| 4 | $600.00 | $60.00 | $405.53 | $134.47 | $0.00 | $19,177.96 | $127.85 | $277.67 | $18,900.29 |
| 5 | $600.00 | $60.00 | $405.53 | $134.47 | $0.00 | $18,900.29 | $126.00 | $279.53 | $18,620.76 |
| 6 | $600.00 | $60.00 | $405.53 | $134.47 | $0.00 | $18,620.76 | $124.14 | $281.39 | $18,339.37 |
| 7 | $600.00 | $60.00 | $405.53 | $134.47 | $0.00 | $18,339.37 | $122.26 | $283.27 | $18,056.10 |
| 8 | $600.00 | $60.00 | $405.53 | $134.47 | $0.00 | $18,056.10 | $120.37 | $285.15 | $17,770.95 |
| 9 | $600.00 | $60.00 | $405.53 | $134.47 | $0.00 | $17,770.95 | $118.47 | $287.05 | $17,483.90 |
| 10 | $600.00 | $60.00 | $405.53 | $134.47 | $0.00 | $17,483.90 | $116.56 | $288.97 | $17,194.93 |
| 11 | $600.00 | $60.00 | $405.53 | $134.47 | $0.00 | $17,194.93 | $114.63 | $290.90 | $16,904.03 |
| 12 | $600.00 | $60.00 | $405.53 | $134.47 | $0.00 | $16,904.03 | $112.69 | $292.83 | $16,611.20 |
| 13 | $600.00 | $60.00 | $405.53 | $134.47 | $0.00 | $16,611.20 | $110.74 | $294.79 | $16,316.41 |
| 14 | $600.00 | $60.00 | $405.53 | $134.47 | $0.00 | $16,316.41 | $108.78 | $296.75 | $16,019.66 |
| 15 | $600.00 | $60.00 | $405.53 | $117.39 | $17.08 | $16,019.66 | $106.80 | $298.73 | $15,720.93 |
| 16 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $15,720.93 | $104.81 | $300.72 | $15,420.21 |
| 17 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $15,420.21 | $102.80 | $302.73 | $15,117.48 |
| 18 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $15,117.48 | $100.78 | $304.74 | $14,812.74 |
| 19 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $14,812.74 | $98.75 | $306.78 | $14,505.96 |
| 20 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $14,505.96 | $96.71 | $308.82 | $14,197.14 |
| 21 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $14,197.14 | $94.65 | $310.88 | $13,886.26 |
| 22 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $13,886.26 | $92.58 | $312.95 | $13,573.31 |
| 23 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $13,573.31 | $90.49 | $315.04 | $13,258.27 |
| 24 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $13,258.27 | $88.39 | $317.14 | $12,941.13 |
| 25 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $12,941.13 | $86.27 | $319.25 | $12,621.87 |
| 26 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $12,621.87 | $84.15 | $321.38 | $12,300.49 |
| 27 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $12,300.49 | $82.00 | $323.52 | $11,976.97 |
| 28 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $11,976.97 | $79.85 | $325.68 | $11,651.29 |
| 29 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $11,651.29 | $77.68 | $327.85 | $11,323.43 |
| 30 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $11,323.43 | $75.49 | $330.04 | $10,993.39 |
| 31 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $10,993.39 | $73.29 | $332.24 | $10,661.16 |
| 32 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $10,661.16 | $71.07 | $334.45 | $10,326.70 |
| 33 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $10,326.70 | $68.84 | $336.68 | $9,990.02 |
| 34 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $9,990.02 | $66.60 | $338.93 | $9,651.09 |
| 35 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $9,651.09 | $64.34 | $341.19 | $9,309.90 |
| 36 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $9,309.90 | $62.07 | $343.46 | $8,966.44 |
| 37 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $8,966.44 | $59.78 | $345.75 | $8,620.69 |
| 38 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $8,620.69 | $57.47 | $348.06 | $8,272.63 |
| 39 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $8,272.63 | $55.15 | $350.38 | $7,922.26 |
| 40 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $7,922.26 | $52.82 | $352.71 | $7,569.54 |
| 41 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $7,569.54 | $50.46 | $355.06 | $7,214.48 |
| 42 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $7,214.48 | $48.10 | $357.43 | $6,857.05 |
| 43 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $6,857.05 | $45.71 | $359.81 | $6,497.23 |
| 44 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $6,497.23 | $43.31 | $362.21 | $6,135.02 |
| 45 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $6,135.02 | $40.90 | $364.63 | $5,770.39 |
| 46 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $5,770.39 | $38.47 | $367.06 | $5,403.33 |
| 47 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $5,403.33 | $36.02 | $369.51 | $5,033.83 |
| 48 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $5,033.83 | $33.56 | $371.97 | $4,661.86 |
| 49 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $4,661.86 | $31.08 | $374.45 | $4,287.41 |
| 50 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $4,287.41 | $28.58 | $376.95 | $3,910.47 |
| 51 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $3,910.47 | $26.07 | $379.46 | $3,531.01 |
| 52 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $3,531.01 | $23.54 | $381.99 | $3,149.02 |
| 53 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $3,149.02 | $20.99 | $384.53 | $2,764.49 |
| 54 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $2,764.49 | $18.43 | $387.10 | $2,377.39 |
| 55 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $2,377.39 | $15.85 | $389.68 | $1,987.71 |
| 56 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $1,987.71 | $13.25 | $392.28 | $1,595.43 |
| 57 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $1,595.43 | $10.64 | $394.89 | $1,200.54 |
| 58 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $1,200.54 | $8.00 | $397.52 | $803.02 |
| 59 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $803.02 | $5.35 | $400.17 | $402.84 |
| 60 | $600.00 | $60.00 | $405.53 | $0.00 | $134.47 | $402.84 | $2.69 | $402.84 | $0.00 |
| Totals | $36,000.00 | $3,600.00 | $24,331.67 | $2,000.00 | $6,068.33 | | $4,331.67 | $20,000.00 | |

[$405.53 is the monthly payment required to amortize the car loan (i.e., $20,000) over the 60 months of the plan at an 8% annual interest rate calculated monthly.]